Our next case today is 524-0309, People v. Brandon Stallings. Counsel, are you ready to proceed? Yes, sir. Come on up. State your name for the record. Good morning. Opposing counsel, your honors, and may it please the court. My name is Savannah Creek, on behalf of Mr. Brandon Stallings. Your honors, before I get into my argument, I would first like to extend my deepest condolences for the loss of your friend and colleague, Justice Welch. Your honors, this appeal concerns two core violations of Mr. Stallings' Fourth Amendment rights. The first being the improper inventory search of his truck, and the second, the warrantless and non-consensual entry into his home. Your honors, for either of both violations, we ask this court to reverse the trial court's denial of Mr. Stallings' motion to suppress and to remand for a new trial without the tainted evidence. Turning to the first issue, the state search of Mr. Stallings' truck, officers located Mr. Stallings' truck hours after the initial entry into the camper in a residential parking lot and proceeded to search it without a warrant under the label of an inventory search. But, as Colorado v. Burr team makes clear, such searches are only valid when they follow standardized procedures and are not a pretext for an investigation. To justify an inventory search under People v. Huntley, the state must show, one, a lawful impoundment, two, that the purpose of the impoundment is to protect property or ensure officer safety, and three, officer compliance with standard procedures. Here, although the officer testified that the search was consistent with their office's procedures, the state failed to support the other two elements. In People v. Clark, an officer justified a search of a car because the car was to be towed and no one was available to drive the car. The officer also did not believe that the car could be left on the street. However, the first district court determined that the car being left unattended was not a sufficient reason to impound the car unless it would have been illegally parked. Here, too, no evidence was presented to show that the truck was illegally parked or uninsured or why a third party couldn't remove it. Further, no evidence was presented that the purpose of the impoundment was to protect property or ensure officer safety. Thus, the impoundment was not justified. Further, the Illinois Supreme Court in People v. Gibson held that courts must scrutinize inventory searches for good faith, which was not shown here. Thus, the state did not meet its burden to show that the search of Mr. Stallings' truck meant a lawful exception to the Fourth Amendment's prohibition on warrantless searches. Turning to the second issue, which involves Deputy Elliott's warrantless entry into Mr. Stallings' home, Officer Elliott violated Mr. Stallings' Fourth Amendment right when he set foot into the home without the permission of J.S. and despite the fact that J.S. denied law enforcement's entry into the home. By the time of the entry, J.S. had already answered the door, was fully cooperative, and expressly denied suicidal ideation. J.S. also denied having made the alleged statement that triggered the welfare check and explained that he had no phone or internet access to have even made the alleged statement. Most crucially, Officer Spetter asked to enter the camper, and J.S. responded, quote, I would, but Dad normally says warrants and stuff. This response clearly withheld incent. Thus, the evidence obtained through the entry is the fruit of the poisonous tree and was improperly relied on in the subsequent search warrant application for the camper. But as the U.S. Supreme Court held in Connickley v. Strom, the community caretaking exception does not justify entry into a home without a warrant unless the entry is necessary to render emergency aid. That's not what happened here. This was not a case of officers being unable to make contact with J.S. or that J.S. had indicated in any way that he was suicidal and was going to harm himself, or even that there were guns in the camper. Once J.S. answered the door and assured officers he was not suicidal, any need for aid ceased. There was no reasonable basis to believe that he was in imminent danger at the moment of the entry. Deputy Elliott even acknowledged that J.S. was calm, compliant, and uninjured. This is further evidenced by Officer Spetter and Elliott's conversation that can be heard on the body-worn cameras. Where the officers agreed that J.S. was safe, Spetter even went as far as to say, quote, this kid is not in any kind of danger to himself. Elliott also stated that he believed that the anonymous tip was, quote, a plot to get officers to know that there were guns in the camper because they had received an anonymous tip a week prior regarding guns being located at the camper. While initially there may have been a concern that J.S. was injured or at risk of being injured, this concern was eliminated when the uninjured co-operative J.S. answered the door and denied self-harm and the ability to have made the reported statement. Moreover, as People v. Hagstaff confirms, the caretaking exception is limited to what is strictly necessary to assist. Elliott could have maintained visual contact from outside, just as Spetter had done minutes before. When J.S. re-entered the camper to put on additional clothing, an officer Spetter illuminated him with a flashlight. Or Elliott could have simply told J.S. no, or even explained that J.S. could enter the camper, but he would have to be accompanied by an officer. That didn't happen. The state's alternative theory that J.S. implied consent by leaving the door open or stepping inside also fails. Because under People v. Anthony, simply not closing the door doesn't constitute consent. J.S. never invited Elliott in, and People v. Anthony makes clear consent must be unapprovable and freely given. Saying, I would, but Dad normally says, warrants and stuff, is a polite but firm denial, not consent. The record lacks any evidence of a firm, verbal, or nonverbal denial. The second district in People v. Davis held that consent is involuntary, where it is the result of acquiescence or submission to police authority, which is what we have here. We have a minor who had answered the door and told officers that they could not enter, and an officer proceeded to enter. Counsel, help my recollection here, though. The counts related to the firearms found in the camper, those counts were dismissed, is that correct? Yes, Your Honor, they were dismissed. The state proceeded on the gun that was found in the car. And you're tying the camper to the car in terms of Fruit of the Poisonous Tree? Is that what I'm… Yes, Your Honor. All right. But what about this issue of the independent source doctrine with relationship to the car? I mean, I think that the officer testified that there… Because counts 1 and 2 were ultimately dismissed as part of the stipulated bench trial, correct? Yes. All right. So, was there not an independent source with relationship to the car because of the cannabis? Can you address that? And to piggyback on that subject, I'd like to blame you, doctor. Yes, Your Honor. While the state did argue on appeal that the gun was discovered in a search incident to arrest in the lower court, they didn't do so in the lower court, and it shouldn't necessarily be considered here. Wow, that is something that is well within your ability to do so. We believe that that shouldn't be the case. Even if, however, at the time of the search it occurred, J.S. had no control over the items located inside of the truck. The search occurred after he was already arrested and detained in the back of an officer's car, so there wasn't a concern for officer safety. And nothing in the BOLO would have given officers reasonable suspicion to search the truck, given that the crime was based on evidence that was found in his home. Moreover, the state also failed to demonstrate that the marijuana violation was anything more than a citation. Given the legality of marijuana possession, the violation was a technical one, more akin, in our opinion, to a traffic stop. And the state never asserted in a lower court argument that the marijuana violation would have given rise to the search for other crimes evidence. So the video that Deputy Elliott was depicted in does not show that he remained at the threshold as the state claimed. He crossed into the camper and was walking around inside immediately once J.S. entered inside. All of the firearms seized from the camper were recovered under a warrant based on Elliott's observations made up after the unlawful entry. Under Wong Song v. United States and People v. Burns, I'm sorry, Your Honors, I see my time is up. Your Honors, both the search of his vehicle and the entry into his camper violated clear constitutional protections. They weren't technical errors. They go to the heart of the Fourth Amendment's protection, and we respectfully request that this court reverse the denial of the motion to suppress. Thank you, Counselor. Ms. Schill, do you have any further questions? No, thanks. Justice Moore? No, please. Thank you. I'll show you out of your time for rebuttal. If I may have a moment to set up, please. You go right ahead. Thank you. Your Honors, may it please the Court and Counsel, my name is Max Booth, I represent the people who also extend their condolences to the loss of your counsel. Thank you. Two deputies responded to the report of a suicidal teen. When responding, they located the individual identified by the caller at the address identified by the caller. One deputy knew that there was a troubled family and knew the teen, J.S. specifically. It was in the middle of the winter, and in a split-second decision, that deputy had to decide whether to hold that teenager in place, remove him from the camper into the cold, or accompany him the least amount necessary in order to maintain a visual after this minor had already identified that he had previously had suicidal thoughts himself. These actions were reasonable under the Fourth Amendment, and as such, they were justified under the circumstances and do not warrant suppression of any evidence. The general touchstone of this issue is reasonableness, and so we have to ask, what should the officer have done under these circumstances? Is the Court making the officers diagnose the mental health of a troubled teen in order to evaluate and leave this child to his own devices entirely unsupervised? That fact is critical to this case here. Essentially, the officers were acting in loco parentis here, given the entirely absent father, no ability to contact him by themselves or the minor himself, and the only individual identified by the teen was this alleged grandpa who himself disavowed any responsibility to the child himself. This kid was on his own, and the officers had to find out what was going on and whether he was safe. The factual findings of the Court justify its ruling and are reviewed under a manifest error standard, under the manifest weight of the evidence. And the evidence supported its finding, and therefore they are not subject to being overturned. Specifically, the Court noted that the officers, regardless of their statements about the caller's intentions, treated the report as possibly credible. I encourage the Court to review the video itself, which corroborates the Court's findings. Specifically, in Elliot's body-worn camera, at the 1-minute mark, he arrives at the camera itself. At the 6-minute and 21-second mark, he is standing in the doorway, no further than necessary, to see off from the doorway to his left where the minor enters and would otherwise be out of view from the outside. Then, at the 7-minute and 30-second mark, he is still discussing whether or not that teen is taking any medication and is safe to himself when he is viewing the bathroom where the evidence is located in plain view from that spot. The video supports that this officer did no more to enter than was absolutely necessary to check on this minor. It justified what he did. Also, the strict limitation on the entry is relevant to the consideration here. When the minor first talked about what Dad says about warrants, the Court made a specific factual finding there, justified by the video, namely that it was in response to a question about whether the officers could enter in order to look for guns. It wasn't a freestanding request to enter. It was specific to whether or not they could look for guns inside the camper, and that is when the teen talked about, well, Dad, I would, but Dad says warrants and stuff. Aside from any ambiguity in that, that is starkly different from the continued conversation that he had with the deputy about whether or not he wanted water, that he was going to get water, and their continued conversation as they traveled in were no more than necessary for the teen to get the water and for the officer to maintain visual contact on him in order to ensure that minor's well-being. Another factual finding specifically made by the Court where that finding deserves deference. As to a point from the reply that was filed that was after the people had submitted their response brief, just the people would like to emphasize that the exigency and related factual issues therein are related to a probable cause standard, but they do not require probable cause of an offense. And specifically, the people would cite Ferrell, which is 397 Bill Act 3D 697, where the reference to probable cause is to basically the standard degree of likelihood, not that there is evidence of a crime, and that's to rate it at less than 50% to some amount, but again, that is divorced from whether or not a crime has been committed in that camper. That's not the standard under Ferrell, and Jones 215 Bill 2D 261 confirms that the degree of likelihood necessary is somewhere below 50%. Further on the topic of the implied consent, I'd like to again emphasize that the initial discussion was in relation to a search for guns and not to entry just far enough to get some water, but moreover that this was during a continuing conversation. Some of the body language isn't present on the video between the officer and the teenager. However, this is also an issue that only comes up after and to the extent you would find alternatively that the actions were not reasonable. And again, the people would encourage the court to consider whether or not we want these officers to be making unilateral decisions to consider the matter concluded by the simple statement that he's fine rather than, as the officers demonstrably did here, remain in the area, make sure the kid's okay, and make sure that he is evaluated by people who have the actual training necessary to make a justified decision about where this kid's at, about how he's doing. Under the reasonableness standard, the people would like to emphasize the two cases cited in the brief, Pagistad by the Illinois Supreme Court and Coniglia by the United States Supreme Court, both of which encourage officers, where there is a risk of harm, that they act on it and that they not merely wait outside. Specifically, the people emphasized Coniglia's, one of the statements in Coniglia, pointing out that suicidality is in particular a risk of harm to an individual inside of a location that merits law enforcement to attempt to prevent that harm. As to the inventory search, there are a few important pieces of evidence that need to be emphasized, namely that there was testimony about whether or not this car could remain there legally. There was specific testimony by one of the law enforcement officers who said that the parking was only permissible by residents of the apartment complex. The defendant was not a resident. His car was getting towed. So to say that there was no evidence on that point misunderstands the record. There was testimony there. Moreover, its purpose was as an inventory search. The officers were very clear that they were conducting a search, that it was an inventory search, and the only legal definition of an inventory search includes that it is to retain the property and not for an investigative purpose. So to claim that the officers don't know what that term means when it is a well-established legal principle, when they conduct inventory searches as part of their job, again, they testified that's what they were doing. That is what the purpose of an inventory search is, so there is evidence on it. As to whether or not there was any intervening cause that would terminate any issue in regards to the fruit of the poisonous tree, the people submit that there are at least two. First of all, that the consensual encounter of the officer approaching the vehicle and defendant of his own accord opening the door of his car where a bag of cannabis is directly in sight is an intervening cause that obviates any concern about the fruit of the poisonous tree entirely irrespective of the fact that the officers were reasonable. Namely, when that officer observes that cannabis, he is allowed to conduct an investigation. Part of that investigation is confirming whether there is additional evidence of any other narcotics or cannabis use inside the vehicle. The people would emphasize that the gun was not hidden particularly. The gun was located behind the right passenger seat. It is in the back pocket of that seat, but it is well within arm's reach. It is directly to the right of the driver, and the officer testified that he was able to observe it in that location. Moreover, the people must note that this was a forfeited issue. The defendant didn't argue this, and in fact waived it. It went beyond mere forfeiture when the defendant suggested that he didn't know if it was crucial to determine these issues, namely the issues at the motion to suppress hearing. He disavowed any importance to it and then went on to argue exclusively the fruit of the poisonous tree. He has barred from trying to obtain relief on something that he encouraged the court was not crucial to the issues. In addition to that, the defendant cannot now rely on not arguing that below default people for not responding to it on appeal. I see my time is up. Thank you. The defendant didn't put the inventory search at issue in the trial report. Since he didn't, the people were not obligated to respond to the new arguments on appeal about it. And so to suggest that the people are foreclosed despite developing the very evidence that supports the issues on consensual account of the cannabis as a basis to eventually discover this weapon is improper. I do have another intervening cause argument, if Your Honors would permit, but I understand my time is up. How long would it take? Very briefly, Your Honor. All right. Just that these officers had, within the last 24 hours, located and taken away JS from defendant's residence by ambulance. And so locating the parent who was entirely unable to be contacted up until that point is an appropriate basis to find an intervening cause, since the defendant suggests there is none. I'd be happy to answer any questions. Thank you, counsel. Justice Moore? Mr. Shiller? All right. I think you covered our questions regarding... I think so. Okay. That's what I just wanted to make sure. Thank you, counsel. Thank you, Your Honors. Your Honor, I did. Your Honors, just briefly, in a rebuttal, going down the list of the things that the State cites. The first thing they cite is this is a split-second decision. This was not a split-second decision. Officers entered the camper six minutes and 21 seconds into being on the scene, having already spoken to JS. They had already spoke to JS at the door, verified that he was uninjured, coherent, and he explicitly stated that he was not suicidal. Officers determined he could not have sent the alleged text because he didn't have phone or Internet access. And thus, the initial risk has dissipated. The State cites Kinnickley v. Strome, and they were correct. It does require an objectively reasonable basis. However, it requires an objectively reasonable basis to believe immediate aid is required. Immediate aid was not required. They already met him at the door, verified that he was uninjured. They could have had any of the other conversations about the medication he was taking or anything like that outside of the camper. They chose to go in having already heard a week prior there may be guns in the camper. The State's position that JS consented or implied consent by stepping inside of the door is unsupported. Illinois Supreme Court makes clear consent must be unquotable and not inferred from the silence of a child's politeness. JS was 16 years old, acting alone in a hall, and he had explicitly denied consent, saying, I would, but Dad normally says more and some stuff. There's no legal basis to convert that into a lawful consent. Turning to the State's argument that Mr. Stallings forfeited the inventory search argument, it fails on the merits. The State argues that Mr. Stallings forfeited the argument, but it's incorrect. Mr. Stallings raised the issue of the legality of the vehicle search as a whole in the motion to suppress on pages 45 and 46 of the record. The issue was litigated at a hearing by both the State and the defense throughout in the record on pages 89 through 94, 98 through 100, 112, 117, 121, and 154 through 155. Although the issue was not addressed in the trial court's denial of the motion to suppress, the issue was argued. To reiterate, the inventory search was invalid. There was no evidence supported that there was a risk to officer safety. There's mention that the gun was located in the rear passenger pouch behind the car. At the time that officers arrested Mr. Stallings, he was outside of the car. His passenger was taken outside of the car at the time they initiated the search. If your honors have no further questions, I would just again ask this court to reverse and remand for a new trial without the use of the unconstitutionally obtained evidence. This is all. Thank you, counsel. Actually, we will take the matter under advisement. We will issue an order in due course.